## In re Consolidation of State and National Banks.

WAGNER, Dep. Att'y-Gen., July 30, 1929.—We beg to acknowledge receipt of your request to be advised relative to the effect of the consolidation of a bank .

or trust company, incorporated and organized under the laws of this Commonwealth, with a national banking association under the provisions of the Act of Congress of Feb. 25, 1927, chap. 91, 44 Stat. at L. 1224, amending the Act of Nov. 7, 1918, chap. 209, 40 Stat. at L. 1043, by adding a new section, known as section 3, thereto upon the corporate existence of such bank or trust company.

The Act of Congress under consideration, referred to above, reads as follows:

"Section 3. That any bank incorporated under the laws of any state, or any bank incorporated in the District of Columbia, may be consolidated with a national banking association located in the same county, city, town or village under the charter of such national banking association on such terms and conditions as may be lawfully agreed upon by a majority of the board of directors of each association or bank proposing to consolidate, and which agreement shall be ratified and confirmed by the affirmative vote of the shareholders of each such association or bank owning at least two-thirds of its capital stock outstanding, or by a greater proportion of such capital stock in the case of such state bank if the laws of the state where the same is organized so require, at a meeting to be held on the call of the directors after publishing notice of the time, place and object of the meeting for four consecutive weeks in some newspaper of general circulation published in the place where the said association or bank is situated, and in the legal newspaper for the publication of legal notices or advertisements, if any such paper has been designated by the rules of a court in the county where such association or bank is situated, and if no newspaper is published in the place, then in a paper of general circulation published nearest thereto, unless such notice of meeting is waived in writing by all stockholders of any such association or bank, and after sending such notice to each shareholder of record by registered mail at least ten days prior to said meeting, but any additional notice shall be given to the shareholders of such state bank which may be required by the laws of the state where the same is organized. The capital stock of such consolidated association shall not be less than that required under existing law for the organization of a national banking association in the place in which such consolidated association is located; and all the rights, franchises and interests of such state or district bank so consolidated with a national banking association in and to every species of property, real, personal and mixed, and choses in action thereto belonging, shall be deemed to be transferred to and vested in such national banking association into which it is consolidated without any deed or other transfer, and the said consolidated national banking association shall hold and enjoy the same and all rights of property, franchises and interests, including the right of succession as trustee, executor or in any other fiduciary capacity in the same manner and to the same extent as was held and enjoyed by such state or district bank so consolidated with such national banking association. When such consolidation shall have been effected and approved by the comptroller, any shareholder of either the association or of the state or district bank so consolidated, who has not voted for such consolidation, may give notice to the directors of the consolidated association, within twenty days from the date of the certificate of approval of the comptroller, that he dissents from the plan of consolidation as adopted and approved, whereupon he shall be entitled to receive the value of the shares so held by him, to be ascertained by an appraisal made by a committee of three persons, one to be selected by the shareholder, one by the directors of the consolidated association, and the third by the two so chosen; and in case the value so fixed shall not be satisfactory to such shareholder, he may, within

five days after being notified of the appraisal, appeal to the Comptroller of the Currency, who shall cause a reappraisal to be made, which shall be final and binding; and the consolidated association shall pay the expenses of reappraisal, and the value as ascertained by such appraisal or reappraisal shall be deemed to be a debt due and shall be forthwith paid to said shareholder by said consolidated association, and the shares so paid for shall be surrendered and, after due notice, sold at public auction within thirty days after the final appraisement provided for in this act; and if the shares so sold at public auction shall be sold at a price greater than the final appraised value, the excess in such sale price shall be paid to the said shareholder; and the consolidated association shall have the right to purchase such shares at public auction, if it is the highest bidder therefor, for the purpose of reselling such shares within thirty days thereafter to such person or persons and at such price as its board of directors by resolution may determine. The liquidation of such shares of stock in any state bank shall be determined in the manner prescribed by the law of the state in such cases. if such provision is made in the state law; otherwise as hereinbefore provided. No such consolidation shall be in contravention of the law of the state under which such bank is incorporated.

"The words 'state bank,' 'state banks,' 'bank' or 'banks,' as used in this section, shall be held to include trust companies, savings banks or other such corporations or institutions carrying on the banking business under the authority of state laws."

The legal effect of a consolidation under the above act has been considered fully by the Supreme Judicial Court of Massachusetts in the cases of Petition of Worcester County National Bank of Worcester, 161 N. E. Repr. 797, and 162 N. E. Repr. 217. In the first case, the facts were that the Fitchburg Bank and Trust Company had consolidated with the Merchants' National Bank of Worcester, the name of which was simultaneously changed to Worcester County National Bank of Worcester, and the question involved was whether the national bank could continue to function as administrator of an estate of which the Merchants' National Bank of Worcester had been duly appointed administrator prior to the consolidation. The court answered the question in the affirmative, discussing in its opinion the effect of the consolidation upon the status of the national bank in the following language (page 798):

"It is unnecessary for the decision of this case to determine whether the trust company lawfully could consolidate with the national bank, because we are of opinion that the legal obligation of the national bank appointed by the court to administer this estate is not in any respect impaired by what has taken place with respect to consolidation with the trust company under said section 3. The national bank has not been extinguished, dissolved or essentially altered by the form of consolidation under said section 3, whether that consolidation be treated as lawful and effective or as unauthorized and futile. Plainly, if it be the latter, the obligation of the national bank to administer the estate remains in full force. That obligation, lawful at its inception, has not been diminished, enhanced or changed thereby any more than it would be by any other *ultra vires* act of the national bank. If the consolidation be treated as lawful and effective, the national bank is the corporation now existing and operative. By the terms of said section 3 the consolidation was 'under the charter' of the national bank. That bank has continued to exercise all its functions, without modification, under the same charter in the same manner and under the same legal sanctions and authorization since the consolidation

as before. No new charter has been issued to it. The certificate of approval of the consolidation by the Comptroller of the Currency is in no sense a new or modified charter. It is no more than a formal expression by the Comptroller of the Currency of his approval of the consolidation. The corporate identity of the national bank has continued unaffected by anything in connection with the consolidation. Its corporate existence under the same charter, subject to the same laws and owing fealty to the same jurisdiction has persisted without change. Its financial resources may have been increased or diminished by the addition of the assets of the trust company and the assumption of its debts, but its obligations and duties not arising out of the consolidation abide in full force and effect as if there had been no consolidation. Among the duties and obligations which endure undisturbed by the consolidation is the trust to continue and finish the administration of the estate of the decedent.

"The simple change of name of the national bank did not disturb its corporate identity or continuity of existence, which has remained uninterrupted. See Act of Congress of May 1, 1886, ch. 73, § 2, 24 U. S. Stat. at L. 18 (12 U. S. C. A., § 30):"

In the second Worcester County National Bank case, the consolidation of the Fitchburg Bank and Trust Company and the Merchants' National Bank of Worcester was likewise involved. The Worcester County National Bank filed a petition with the Probate Court of Worcester County for leave to render an account as executor of the estate of Julia A. Legnard, deceased, of which estate the bank and trust company had been appointed and duly qualified as executor prior to its consolidation with the national bank. No change in the administration of the estate appeared on the court record. Leave to so account was denied. The court said, in considering the effect of the consolidation upon the status of the state banking institution (162 N. E. Repr. 220):

"The next question to be determined is what is the legal effect of such consolidation upon the trust company and upon the national bank. The words of said section 3 (44 U. S. Stat. at L., part II, pages 1225, 1226) are explicit to the point that the consolidation shall be 'under the charter of such national banking association.' This of itself is clear indication of intent that the state trust company shall not continue as a corporation in combination with the national bank. The words of St. 1922, ch. 292, amending G. L., ch. 172, § 44, are equally explicit that upon any consolidation of a Massachusetts trust company, whether with a bank or another trust company, its charter 'shall be void except for the purpose of discharging existing obligations and liabilities.' The statutes of this Commonwealth upon the subject of a trust company owing its creation and existence exclusively to those statutes must be valid and binding to this extent. The later provision of said section 3 that there shall be transferred to the national banking association and be held by it, among other things, the 'franchise' of the state bank, cannot mean its right to be a corporation. The right to transfer franchise powers of a corporation organized under the laws of one sovereignty to a corporation organized under the laws of a different sovereignty is extraordinary. It cannot be implied in the absence of explicit statutory enactment to that end. There is no such provision in the statutes of this Commonwealth. Any other conclusion would be in contravention of the laws of this Commonwealth. It is manifest from the terms of said section 3 (44 U. S. Stat. at L., part II, pages 1225, 1226) and from the terms of said St. 1922, ch. 292, that the charter of the trust company here in question became void on the consolidation (except for purposes not here material), and that the only corporation now operative

is the national bank. The trust company as a Massachusetts corporation has ceased to be an institution capable of transacting business. The national bank existing before the consolidation has continued to exercise all its functions without alteration or modification under the same charter since the consolidation as before. The consolidation contemplated by said section 3 is an absorption of the state bank with all its assets by the national banking association, which retains its corporate identity. Its provisions differ in this particular from many statutes authorizing the consolidation of corporations which effect the extinguishment of the constituent corporations and the establishment of a new corporation."

The latter case was appealed to the United States Supreme Court, and Mr. Chief Justice Taft, in delivering the opinion of that court, commented upon the decision of the Massachusetts court upon the question here under consideration in the following language, 73 L. Ed. (Adv. 427):

"The court then considered what was the legal effect of the consolidation on the trust company and the national bank and emphasized the explicit provision of section 3 that the consolidation was to be under the charter of the national bank. It referred again to the provision of the state law that upon the consolidation the charter of the trust company should be 'void except for the purpose of discharging existing obligations and liabilities.' It held that the word 'franchises' directed to be transferred to the national bank by virtue of section 3 did not mean its charter or its right to be a corporation, for that would be in contravention of the law of the commonwealth; that it was only the national bank that retained its corporate identity; that the certificate of the Comptroller did not constitute a charter, but only his approval of the consolidation; that the trust company had gone out of existence and all its property had become the property of the consolidated bank; and that the latter was not a newly-created organization, but an enlargement of the continuously existing national bank. Thus, the court found that the identity of the trust company had not been continued in a national bank, but had been extinguished. The court distinguished this case from cases of union where contract obligations had been held to pass from one of the uniting corporations to the other. Such cases were held not to be applicable to sustain the view that positions of trust like executor, administrator and other fiduciaries could be transferred to the national bank by the mere consolidation under Massachusetts law."

It will be noted that, while the holding of the state court is not expressly adopted or approved, no dissent is expressed. The Act of Congress clearly provides that the consolidation shall take place under the charter of the existing national bank, and the decision in the Massachusetts case clearly holds that the corporate existence of the state bank or trust company consolidating with the national bank is not rendered void and its corporate existence dissolved by the mere fact of such consolidation. The legal effect of such a consolidation upon the charter and corporate existence of the state institution depends upon the laws of the state under which the institution is organized. In Massachusetts, the state statute specifically provides that the charter of a state institution shall become void upon consolidation with any other bank or trust company, and since its scope is not limited to the consolidation of one state institution with another state institution, it was held to apply to the case of the consolidation of a state banking institution with a national banking association.

On the other hand, it would seem to be contrary to every principle of law that a corporation created under the laws of one sovereignty could be dis-

solved and its corporate existence terminated by virtue of the provisions of a law of another sovereignty in the absence of the express consent, evidenced by legislative enactment, of the sovereignty creating such corporation. We can see no escape from this proposition, and it is supported by the authority above cited.

The only statute in Pennsylvania relative to the disposition of the charter of a state bank upon its affiliation with a national bank is the Act of April 26, 1889, P. L. 56, which provides a method for the surrender of the charter of a state bank upon its becoming a national banking association, but the surrender takes place only upon compliance with the requirements of the act. If, therefore, in any case in which a bank or trust company of this Commonwealth is consolidated with a national banking institution under the Act of Congress referred to above, the provisions of the Act of 1889 just referred to are also followed, a surrender of the charter of the state bank or trust company will necessarily follow.

You are, therefore, advised that, unless the provisions of the Act of April 26, 1889, P. L. 56, are followed, the consolidation of a state bank or trust company with a national bank, under the Act of Congress of Feb. 27, 1927, does not void the charter or terminate the corporate existence of such state bank or trust company. Proceedings should be taken by the proper officers of the state institution to effect a voluntary dissolution under the provisions of the Act of April 9, 1856, P. L. 293. If such proceedings are not taken, you should return such institution to the Attorney-General, under the provisions of section 17 of the Banking Act of 1923 (Act of June 15, 1923, P. L. 809), as amended by the Act of May 5, 1927, P. L. 762, for the institution of *quo warranto* proceedings.

From C. P. Addams, Harrisburg, Pa.